Stanton v Longwood Cent. Sch. Dist. (2024 NY Slip Op 06600)

Stanton v Longwood Cent. Sch. Dist.

2024 NY Slip Op 06600

Decided on December 24, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 24, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

VALERIE BRATHWAITE NELSON, J.P.
JOSEPH J. MALTESE
LINDA CHRISTOPHER
LILLIAN WAN
LAURENCE L. LOVE, JJ.

2023-08768
 (Index No. 602986/20)

[*1]Megan Stanton, appellant, 
v
Longwood Central School District, respondent.

O'Brien & O'Brien, LLP, Nesconset, NY (Edmond C. Chakmakian of counsel), for appellant.
Mulholland, Minion, Davey, McNiff & Beyrer, Williston Park, NY (Brian R. Davey and Matthew L. Williams of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for negligence, the plaintiff appeals from an order of the Supreme Court, Suffolk County (Leonard D. Steinman, J.), dated July 12, 2023. The order, insofar as appealed from, granted those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging negligent hiring, retention, and supervision of Erwin Faralan, and negligent supervision of the plaintiff.
ORDERED that the order is reversed insofar as appealed from, on the law, with costs, and those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging negligent hiring, retention, and supervision of Erwin Faralan, and negligent supervision of the plaintiff are denied.
In 2003 and 2004, when she was 15 to 17 years old, the plaintiff was sexually abused by her high school math teacher, Erwin Faralan. Faralan was criminally convicted for his conduct and sentenced to a period of incarceration in 2008. The plaintiff commenced this action against Longwood Central School District (hereinafter the district) pursuant to the Child Victims Act (see CPLR 214-g), alleging, among other things, that the district was negligent in hiring, retaining, and supervising Faralan, and in supervising the plaintiff.
The district moved for summary judgment dismissing the complaint. With respect to the causes of action alleging negligent hiring, retention, and supervision of Faralan, and negligent supervision of the plaintiff, the district asserted, inter alia, that it lacked actual or constructive notice of the sexual abuse. The evidence submitted on the district's motion established that Faralan was a probationary employee during the time of the abuse. The district also submitted the plaintiff's examination before trial, in which she testified to the following: Faralan was the plaintiff's math teacher during her sophomore year of high school. The plaintiff struggled with math, and Faralan provided her with tutoring before, during, and after school during her sophomore and junior years. During the summer between the plaintiff's sophomore and junior years, Faralan began to communicate with the plaintiff using AOL instant messenger under the pretext of enabling the plaintiff to ascertain her Regents grade. In the fall of her junior year, in Faralan's classroom, and [*2]while other students were present, Faralan told the plaintiff that she looked "very pretty" and hugged her. Faralan continued to message the plaintiff and comment on her physical appearance. He also obtained her phone number from a card that the plaintiff had filled out to account for a textbook and began to call her daily at home and comment on her physical appearance. One Saturday, in October or November of 2003, during the plaintiff's junior year, Faralan called the plaintiff, inquired whether anyone was home with her, and upon learning that she was alone, said that he would be "right there," and arrived within 10 seconds. Faralan went into the plaintiff's home and sexually assaulted her.
Following that incident, Faralan continued to call the plaintiff on a daily basis and began using sexually explicit language. In his classroom during their tutoring sessions, Faralan directed the plaintiff to sit at the back of the classroom, where he would molest her while she was sitting at a desk doing math work. He would engage in this conduct at every tutoring session, sometimes when other students were in the classroom. In March 2004, during the plaintiff's junior year, Faralan sexually assaulted the plaintiff on a Saturday in his automobile. Following that incident, Faralan began to play sexually explicit music in the classroom, look at the plaintiff, and wink at her. The plaintiff attended tutoring sessions in Faralan's classroom two to three times per week, and he continued to molest her in the back of the classroom during the group tutoring sessions. At some point, Faralan began to have the plaintiff sit at a desk in the hallway during one-on-one tutoring sessions, where he would touch her under the desk. In August 2004, during the summer break, Faralan sexually assaulted the plaintiff in his automobile. The plaintiff did not have contact with Faralan after that incident. The plaintiff heard rumors that Faralan had abused other girls at school. The plaintiff saw Faralan engage in flirtatious behavior with another girl, younger than the plaintiff, whom he tutored at school, and she heard him make comments on that girl's physical appearance. During the plaintiff's senior year of high school, a teacher, whose classroom was next door to Faralan's classroom, commented that Faralan was "too friendly with his students." Following her graduation from high school in 2005, the plaintiff began to have panic attacks, requiring hospital treatment, and she eventually disclosed the sexual abuse and assaults to her mother, which triggered the police investigation, leading to Faralan's arrest.
In support of its motion for summary judgment, the district also submitted a transcript of the deposition testimony of a fellow math teacher, who had continued to socialize and play tennis with Faralan well after Faralan was convicted and had served a period of incarceration for his criminal conduct with the plaintiff. That teacher testified that he had never heard of inappropriate behavior by Faralan and that he thought that Faralan had a good rapport with his students. The district also submitted an affidavit of the principal of the high school, who retired at the end of the 2004/2005 school year and averred that he had never received any complaints regarding Faralan, or heard any rumors of inappropriate behavior by Faralan. The Supreme Court, inter alia, granted those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging negligent hiring, retention, and supervision of Faralan, and negligent supervision of the plaintiff. The plaintiff appeals.
"Although an employer cannot be held vicariously liable for torts committed by an employee who is acting solely for personal motives unrelated to the furtherance of the employer's business, the employer may still be held liable under theories of negligent hiring, retention, and supervision of the employee" (Johansmeyer v New York City Dept. of Educ., 165 AD3d 634, 635 [citations and internal quotation marks omitted]; see Hammill v Salesians of Don Bosco, 228 AD3d 738, 739; MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d 845, 846). "To establish a cause of action based on negligent hiring, negligent retention, or negligent supervision, it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (Hammill v Salesians of Don Bosco, 228 AD3d at 739 [internal quotation marks omitted]; see Sayegh v City of Yonkers, 228 AD3d 690, 691; MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d at 846). "The employer's negligence lies in having placed the employee in a position to cause foreseeable harm, harm which would most probably have been spared the injured party had the employer taken reasonable care in making decisions respecting the hiring, retention, or supervision of the employee" (MCVAWCD-Doe v Columbus Ave. Elementary Sch., 225 AD3d at 846-847 [alterations and internal quotation marks omitted]; see Hammill v Salesians of Don Bosco, 228 AD3d at 739; Johansmeyer v New York City Dept. of Educ., 165 AD3d at 635-636).
With respect to a cause of action alleging negligent supervision of a student, "[a] school or school district owes a duty to adequately supervise the students in its care, and may be held liable for foreseeable injuries proximately related to the absence of adequate supervision" (MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d at 847 [internal quotation marks omitted]; see Fain v Berry, 228 AD3d 626, 627; Kwitko v Camp Shane, Inc., 224 AD3d 895, 895-896). "The standard for determining whether the school has breached its duty is to compare the school's supervision and protection to that of a parent of ordinary prudence placed in the same situation and armed with the same information" (Fain v Berry, 228 AD3d at 627 [internal quotation marks omitted]; see Sayegh v City of Yonkers, 228 AD3d at 691; Kwitko v Camp Shane, Inc., 224 AD3d at 896). "Where the complaint alleges negligent supervision due to injuries related to an individual's intentional acts, the plaintiff generally must allege that the [school] knew or should have known of the individual's propensity to engage in such conduct, such that the individual's acts could be anticipated or were foreseeable" (Kwitko v Camp Shane, Inc., 224 AD3d at 896 [internal quotation marks omitted]; see Sayegh v City of Yonkers, 228 AD3d at 691; Fain v Berry, 228 AD3d at 627-628). "Therefore, actual or constructive notice to the school of prior similar conduct generally is required" (Sayegh v City of Yonkers, 228 AD3d at 691-692 [alteration and internal quotation marks omitted]; see MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d at 847).
"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; see Alvarez v Prospect Hosp., 68 NY2d 320, 324). The failure to make such a showing requires denial of the motion regardless of the sufficiency of the opposing papers (see Alvarez v Prospect Hosp., 68 NY2d at 324; Winegrad v New York Univ. Med. Ctr., 64 NY2d at 853).
Here, the district failed to meet its prima facie burden of demonstrating that it was not negligent with respect to the hiring, retention, and supervision of Faralan or that it was not negligent with respect to its supervision of the plaintiff. The district submitted no evidence regarding its hiring, retention, or supervision of Faralan, who was a probationary employee during the time when he sexually abused the plaintiff on school grounds, including times when he was tutoring her one-on-one (see MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d at 848; Johansmeyer v New York City Dept. of Educ., 165 AD3d at 636). Furthermore, the district failed to establish, prima facie, that it lacked constructive notice of Faralan's abusive propensities and conduct, particularly given the frequency of the abuse, which occurred several times per week over an extended period of time in the same classroom and hallway during tutoring sessions and at times when others were present (see Hammill v Salesians of Don Bosco, 228 AD3d at 739-740; Sayegh v City of Yonkers, 228 AD3d at 692; Fain v Berry, 228 AD3d at 628; MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d at 848; Johansmeyer v New York City Dept. of Educ., 165 AD3d at 636; see also Kwitko v Camp Shane, Inc., 224 AD3d at 896).
Our dissenting colleagues improperly shift the burden of proof to the plaintiff on the district's motion for summary judgment and confuse actual notice with constructive notice. On its motion, the burden was on the district to establish, prima facie, that it was not negligent in its supervision of the plaintiff and its supervision of Faralan, and that it lacked notice of Faralan's propensities. Contrary to the suggestion of our dissenting colleagues, the plaintiff has not merely alleged that abuse occurred. As our dissenting colleagues acknowledge, there is no dispute that Faralan sexually abused the plaintiff at school in a classroom and in a school hallway, sometimes in the presence of others, over the course of her junior year of high school with a frequency that the dissent has estimated to be 12 to 20 times. The very nature of constructive notice is that a problem has been visible and apparent for a sufficient length of time such that the defendant should be charged with its knowledge (see Gordon v American Museum of Natural History, 67 NY2d 836, 837). Contrary to the dissent's conclusion, the nature and frequency of the sexual abuse at issue are precisely the facts that are relevant to evaluating constructive notice and whether the district breached its duty to supervise and protect a child as would a parent of ordinary prudence placed in the same situation and armed with the same information. Here, the evidence submitted on the district's motion established a frequency of sexual abuse that occurred at times and in places such that a factfinder could determine that the district had constructive notice and that the district [*3]breached its duty of care to the plaintiff (see Hammill v Salesians of Don Bosco, 228 AD3d at 739-740; Sayegh v City of Yonkers, 228 AD3d at 692; Fain v Berry, 228 AD3d at 628; MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d at 848; Johansmeyer v New York City Dept. of Educ., 165 AD3d at 636). The dissent's conclusion that Faralan's conduct was not actually seen and that his comments were not actually heard by others rests upon speculation and relates to actual, not constructive, notice. Further, the dissent's suggestion that Faralan's conduct of hugging the plaintiff and telling her that she "looked very pretty" was appropriate because her godfather had passed away and that the comment was said quietly, indicates a fundamental misunderstanding of acceptable conduct and of the facts of this case, which undisputedly show that after grooming the plaintiff with such inappropriate behavior, Faralan went on to sexually abuse and sexually assault her.
Accordingly, the Supreme Court should have denied those branches of the defendant's motion which were for summary judgment dismissing the causes of action alleging negligent hiring, retention, and supervision of Faralan, and negligent supervision of the plaintiff.
BRATHWAITE NELSON, J.P., CHRISTOPHER and WAN, JJ., concur.
LOVE, J., dissents, and votes to affirm the order insofar as appealed from, with the following memorandum, in which MALTESE, J., concurs:
In this action commenced pursuant to the Child Victims Act, the plaintiff alleges, among other things, that the defendant, Longwood Central School District, was negligent in the hiring, retention, and supervision of Erwin Faralan. While I agree with many of the majority's characterizations of the facts, including that it is undisputed that the plaintiff was sexually abused by Faralan, an employee of the defendant, while he was her math teacher beginning in October or November 2003 and ending in August 2004, I cannot ignore that the defendant established, prima facie, that it neither knew nor should have known that Faralan had a propensity for inappropriate sexual conduct.
The majority contends that the defendant submitted no evidence regarding its hiring, retention, or supervision of Faralan and further contends that Faralan was a probationary employee during the time when he sexually abused the plaintiff, but this contention is not supported by the record. In support of its motion for summary judgment, the defendant submitted a transcript of the deposition testimony of Christopher Garner, a teacher at Longwood High School, and Leonard Bozza, the principal of Longwood High School, both of whom stated that there were no complaints or rumors about Faralan's behavior, and further submitted Faralan's complete personnel file, which included Faralan's educational credentials, application for employment, including references, appointment by the defendant's superintendent and Board of Education, and Faralan's appointment as a substitute teacher at Longwood High School beginning in December 2000. Following Faralan's appointment to a permanent position, the personnel file included at least 11 separate classroom observations, 4 yearly evaluations by Bozza, all of which were positive, and a letter dated October 7, 2023, appointing Faralan to permanent tenure effective December 15, 2003. Therefore, the defendant established, prima facie, that it complied with proper licensing, hiring, and classroom observation practices (compare Fain v Berry, 228 AD3d 626, 628, with Sayegh v City of Yonkers, 228 AD3d 690 [the defendant's witness was unable to testify as to any of the defendant's policies and hiring practices in the 1970s nor could he identify if the abuser's personnel file was complete], MCVAWCD-DOE v Columbus Ave. Elementary Sch., 225 AD3d 845, 848 [the defendant failed to eliminate triable issues of fact where only a single observation report from the defendant was available in the teacher's employment file during the relevant period], and Johansmeyer v New York City Dept. of Educ., 165 AD3d 634, 636 [a triable issue of fact existed as to whether the New York City Department of Education took the appropriate measures to evaluate the abuser's employment and fitness at the time he was allowed to intern at the school]).
The majority cites the plaintiff's deposition testimony describing the series of events that led up to the abuse of the plaintiff, the description of same, and the aftermath. However, the only relevant events that took place during the period of abuse and that could have been observed [*4]at school were that Faralan directed the plaintiff to sit at the back of the classroom, where he would molest her while she was sitting at a desk doing math work and that, at some point, Faralan began to have the plaintiff sit at a desk in the hallway during one-on-one tutoring sessions, where he would touch her under the desk. Said incidents occurred between 12 and 20 occasions. The majority also highlights testimony that on one occasion, in the fall of her junior year in Faralan's classroom while other students were present, Faralan told the plaintiff that she looked "very pretty" and hugged her, omitting that the hug occurred after the plaintiff was absent from class for two days due to the death of her godfather and that Faralan's alleged comments were not overheard. Contrary to the majority's conclusion, the plaintiff's testimony establishes that any incidents that took place inside of the school were either in the presence of other students, but not observed by those students, or took place in a public hallway and were specifically designed to avoid suspicion. Moreover, the plaintiff's testimony established that she never informed any members of the school's administration or any other person of the sexual abuse during the period that it was occurring.
Although all cases of sexual abuse are serious, referencing the "frequency and nature" of the (alleged) abuse is a slippery slope in the context of establishing constructive notice. The cases cited by the majority that utilize the "frequency and nature" description are distinguishable from, and fall short of, the facts herein. In Johansmeyer v New York City Dept. of Educ. (165 AD3d 634), not only did the abuser lack the qualifications to be present in the school as a guidance counselor, but the school allowed the sixth-grade victim to leave class to meet with the abuser one-on-one, behind closed doors. In MCVAWCD-DOE v Columbus Ave. Elementary Sch. (225 AD3d 845), an elementary school student allegedly was abused during special education lessons, which occurred one-on-one and behind closed doors, and the plaintiff testified at his deposition that the school principal "never came in" or "checked" on him during the lessons (id. at 848 [internal quotation marks omitted]). In Hammill v Salesians of Don Bosco (228 AD3d 738), the plaintiff averred in an affidavit that he was abused repeatedly in a dormitory in view of other campers, that on other nights he observed his abuser abuse other campers, and "that he 'clearly told' . . . an employee in the camp's infirmary, about the first of [the] alleged assaults, which continued thereafter" (id. at 740). Sayegh v City of Yonkers (228 AD3d 690) involved the alleged abuse of a fifth grader that occurred more than 100 times in the same classroom. The facts in this case even fall short of the minimal showing in Fain v Berry (228 AD3d 626), wherein the defendants established their prima facie entitlement to dismissal based upon similar evidence to this case, but the plaintiff established a triable issue of fact through the submission of an affidavit "wherein she averred that the teacher . . . made comments directly to other staff and in the presence of other students about the plaintiff's appearance, and the teacher made arrangements with the plaintiff during school hours and on school grounds to meet after school where the alleged abuse took place" (id. at 628).
While the frequency and nature of the abuse (allegedly) perpetrated against those plaintiffs is a factor to be considered in those plaintiffs' raising of a triable issue of fact, in the absence of additional factors, the nature and frequency of the alleged abuse, standing alone, is insufficient to raise a triable issue of fact. To hold otherwise would essentially preclude the granting of any motions for summary judgment dismissing the complaint where the plaintiff merely alleges that abuse occurred. Beyond merely alleging the nature and frequency of the alleged acts, the plaintiff must raise a triable issue of fact as to actual or constructive notice, which the plaintiff herein failed to do.
Accordingly, I would affirm the order insofar as appealed from.
ENTER:
Darrell M. Joseph
Clerk of the Court